**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DUANE BAKER**, and
**SYLVIA BAKER**
856 Summerfield Drive
Lakeland, FL 33803

Plaintiffs,

v.

**CHASTAIN-SKILLMAN, LLC,**
205 East Orange Street, Ste 110
Lakeland, FL 33801

Serve: Incorp Services, Inc.
3458 Lakeshore Drive
Tallahassee, FL 32312

~and~

**THE DRUMMOND COMPANY, INC.,**
1000 Urban Center Drive, Ste 300
Vestavia Hill, AL 35242

Serve: CT Corporation System
1200 S. Pine Island Road
Plantation, FL 33324

Defendants.

Case No.:

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiffs Duane Baker and Sylvia Baker, by and through undersigned counsel, bring this individual civil action against Defendants Chastain-Skillman, LLC ("CS") and The Drummond Company, Inc. ("Drummond") and alleges as follows:

**FACTUAL SUMMARY**

1. This is a civil action for damages exceeding $75,000, exclusive of interest and costs.

2. Duane Baker and Sylvia Baker (hereinafter referred to as the "Bakers") seek redress for radioactive contamination affecting their residence at 856 Summerfield Drive, Lakeland, Florida (the "Baker Property"), which lies within approximately 1,400 acres of former phosphate-mining land reclaimed and developed for residential and commercial use (the "Former Mine Area").

3. Drummond purchased and operated the former phosphate mine, generated and managed mining wastes, retained CS to provide engineering and environmental services in connection with reclamation, controlled the land, and caused portions of the reclaimed land to be developed and sold for residential use.

4. CS undertook professional engineering and environmental consulting work in connection with reclaiming the former mine. Through its own reclamation-related work, CS participated in handling, placing, managing, or failing to identify and control radioactive mining materials that remained within the Former Mine Area.

5. Phosphate ore and phosphate-mining wastes contain uranium decay products, including radium-226. Radium-226 and related radionuclides emit gamma radiation and generate radon and other radioactive decay products.

6. Drummond knew, before residential development, that surveys of the Former Mine Area showed gamma-radiation levels substantially above normal background and predicted that a significant percentage of homes built there would exceed federal indoor-radiation guidelines.

7. CS, as the professional engineering and environmental consultant retained for reclamation, knew or should have known that phosphate-mining wastes and disturbed phosphate lands could contain elevated concentrations of radium-226 and could emit elevated gamma radiation.

8. Nevertheless, Drummond and CS each failed, through their respective acts and omissions, to ensure that the Former Mine Area was adequately investigated, reclaimed, restored, and protected from the continuing presence of radioactive contamination before residential development.

9. Drummond later developed or caused the development and sale of former mine lands for residential use without disclosing to Duane Baker and Sylvia Baker the elevated radiation identified by governmental investigations or the resulting need for further assessment and remedial action.

10. Radioactive mining materials remain on, beneath, and around the Baker Property. Those materials continue to emit radiation and constitute an ongoing condition of pollution.

11. Radioactive contaminants and radiation emanating from the surrounding Former Mine Area also continue to invade and interfere with the Baker's use and enjoyment of the Baker Property.

12. The contamination is latent and was not apparent through ordinary observation. The Baker's did not know when they acquired their interest in the property that radioactive contamination affected the property or that it resulted from Defendants' respective mining and reclamation activities.

13. As a direct and proximate result of Defendants' respective acts and omissions, the Baker's have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, annoyance, inconvenience, and other consequential losses.

## PARTIES

### Plaintiff

14. Duane Baker is an adult domiciled in and a citizen of Florida. His primary and only residence is the Baker Property. He is registered to vote in Florida and intends to remain at the Baker Property for the foreseeable future.

15. Sylvia Baker is an adult domiciled in and a citizen of Florida. Her primary and only residence is the Baker Property. She is registered to vote in Florida and intends to remain at the Baker Property for the foreseeable future.

### Defendants

16. Drummond is incorporated in Alabama and maintains its principal place of business in Alabama. Drummond is therefore a citizen of Alabama for diversity purposes.

17. In or around 1978, Drummond purchased the Poseidon Mining Company and more than 1,400 acres of previously mined land in Polk County, Florida. Drummond initially operated Poseidon as a wholly owned subsidiary and later merged with Poseidon. Drummond, its predecessors, or its wholly owned subsidiaries mined, managed mining wastes on, reclaimed, controlled, developed, or caused the development of portions of the Former Mine Area.

18. CS is a Delaware limited liability company. CS's sole member is DCCM AcquireCorp., Inc., a Delaware corporation with its principal place of business in Texas. CS is therefore a citizen of Delaware and Texas for diversity purposes.

19. Before February 13, 2024, CS was a Florida corporation known as Chastain-Skillman, Inc. On February 13, 2024, Chastain-Skillman, Inc. converted to Chastain-Skillman, LLC. References to CS include its predecessor to the extent responsible for the conduct alleged.

20. CS is a civil and environmental engineering and consulting firm that Drummond retained to provide professional services in connection with reclaiming the former phosphate mine that became the Former Mine Area.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The Bakers are citizens of Florida; Drummond is a citizen of Alabama; and CS is a citizen of Delaware and Texas. Complete diversity therefore exists.

22. The amount in controversy exceeds $75,000, exclusive of interest and costs, because the Bakers seek damages for radioactive contamination affecting their residence, including reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, and other consequential property losses, the value of which exceeds $75,000.

23. This Court has personal jurisdiction over Defendants because the claims arise from Defendants' respective acts and omissions in Florida concerning land in Florida.

24. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District and the Baker Property is located in Polk County, Florida.

## FACTUAL ALLEGATIONS

### A. The Bakers and the Baker Property

25. The Baker Property is located at 865 Summerfield Drive, Lakeland, Florida, 33803, within the Former Mine Area.

26. The Baker Property is the Bakers' primary and only residence.

27. Before acquiring and occupying the property, the Bakers were not informed that the property was located within a former phosphate mine or that radioactive mining materials had been left on, beneath, or around it.

28. Neither Drummond nor CS disclosed to the Bakers the governmental surveys, memoranda, and assessments described below or the elevated radiation levels identified within the Former Mine Area.

29. The contamination affecting the Baker Property is latent. It cannot be detected through ordinary observation and requires specialized radiological investigation and testing.

30. Radioactive mining wastes, radioactive soils, radium-226, and related radionuclides are present on, beneath, or around the Baker Property and emit gamma radiation and other radioactive decay products.

31. The radioactive materials remain in place and continue to produce radiation. The resulting condition of pollution is ongoing and unabated.

**B. Background of Phosphate Mining and Radioactive Contamination**

32. Florida produces a substantial portion of the nation's phosphate. Phosphate ore is naturally rich in radioactive elements, including uranium and its decay products such as radium-226.

33. Mining disturbs and redistributes those radioactive elements. The wastes and byproducts remaining after phosphate ore is removed can contain enhanced or concentrated radioactive materials.

34. Radium-226 has a half-life of approximately 1,600 years. It emits gamma radiation and decays into radon gas and other radioactive products.

35. Gamma radiation can penetrate the human body. Radium-226, radon, and other uranium decay products are recognized carcinogens, and long-term exposure increases the risk of cancer and other diseases.

36. Testing for radon does not detect gamma radiation, and the absence of elevated radon does not establish the absence of elevated gamma radiation.

37. Poseidon engaged in strip-mining activities on the lands that later became the Former Mine Area.

38. Florida law requires mining companies to "reclaim" and restore former mining lands in a manner that returns the land to its original condition prior to mining or mining operations. Ch. 378, Fla. Stat. & Ch. 62C-16, Fla. Admin. Code.

39. Instead of removing or isolating all radioactive mining materials, reclamation activities redistributed or left radioactive wastes, soils, clays, slimes, and fill within the Former Mine Area.

40. Those activities brought radioactive materials nearer the ground surface and left them beneath and around areas later developed for homes, including the Baker Property.

**C. Drummond's Conduct**

41. Drummond purchased the Poseidon Mining Company and more than 1,400 acres of previously mined land in or around 1978.

42. Drummond initially operated Poseidon as a wholly owned subsidiary and later merged with Poseidon. Drummond and its predecessors or subsidiaries mined and managed mining wastes within the Former Mine Area.

43. Drummond owned or controlled the former mine lands and retained CS to provide engineering and environmental consulting services in connection with reclamation.

44. Drummond participated in and controlled decisions concerning the reclamation, restoration, disposition, and development of the former mine lands.

45. Drummond caused radioactive mining wastes and other hazardous substances to be released, discharged, placed, redistributed, or left in and upon land and water within the Former Mine Area.

46. Drummond failed adequately to investigate, characterize, contain, remove, or abate the radioactive materials before allowing residential development.

47. Drummond knew that portions of the reclaimed land would be developed for residential and commercial use.

48. Drummond developed, promoted, sold, or caused the development and sale of former mine land for residential use despite its knowledge of elevated radiation levels and without disclosing the contamination to later purchasers and residents, including the Bakers.

49. Drummond represented publicly that its developments reflected detailed planning, careful execution, and preservation of natural spaces, while failing to disclose the elevated radiation identified on its Lakeland property.

50. Drummond has not removed or abated the radioactive contamination affecting the Baker Property and surrounding Former Mine Area.

**D. Chastain-Skillman's Conduct**

51. CS is a professional civil and environmental engineering and consulting firm.

52. Drummond retained CS to provide professional engineering and environmental services in connection with reclaiming the former phosphate mine.

53. CS undertook reclamation-related work concerning the disturbed former mine lands, including professional services concerning the handling, placement, grading, restoration, and disposition of materials within the Former Mine Area.

54. In carrying out its own professional work, CS knew or should have known that phosphate-mining wastes, clays, slimes, soils, and fill could contain elevated concentrations of radium-226 and other radionuclides.

55. CS knew or should have known that placing, redistributing, or leaving those materials near the surface could create elevated gamma radiation and other continuing conditions of pollution in areas intended for residential use.

56. CS failed adequately to identify, investigate, characterize, segregate, contain, remove, or warn about radioactive materials encountered or managed through its reclamation-related work.

57. Through its own acts and omissions, CS participated in reclamation that redistributed or left radioactive mining materials within the Former Mine Area, including areas affecting the Baker Property.

58. CS failed to exercise reasonable professional care to prevent radioactive mining materials from remaining in locations that would expose later residential properties to continuing radioactive contamination.

**E. Knowledge of Elevated Radiation**

59. As early as September 1975, the EPA Administrator informed the Governor of Florida that EPA had found elevated radiation in buildings constructed on reclaimed phosphate-mining lands and recommended discouraging new construction on contaminated phosphate lands.

60. In October 1978, the Florida Radiological and Occupational Health Department conducted a radiological survey of land proposed for residential and commercial development within the Former Mine Area.

61. The survey measured mean gamma-radiation levels of approximately 15 to 20 microroentgens per hour and highs of approximately 35 to 40 microroentgens per hour, compared with background levels of approximately 5 to 7 microroentgens per hour.

62. The survey concluded that approximately one-third of homes in one surveyed area and a large percentage of homes in the other would have indoor gamma-radiation levels above federal guidelines.

63. In July 1980, the Florida Department of Health and Rehabilitative Services responded to Drummond's request for a radiation survey of its Lakeland property.

64. The State reported an average gamma-radiation level of approximately 18.1 microroentgens per hour and a high of approximately 36 microroentgens per hour.

65. The State advised that the property had average radiation measurements two to three times normal background and that a significant percentage of homes built there would probably have indoor radiation levels exceeding recommended federal guidelines.

66. Drummond therefore had actual knowledge, before residential development, that its former mine land contained elevated gamma radiation and that homes built there were likely to exceed federal guidance.

67. CS, because of its reclamation role and its professional engineering and environmental expertise, knew or should have known of the radiological hazards associated with disturbed phosphate lands and of the need to investigate and control radioactive reclamation materials before residential use.

68. In 1980, the Florida Department of Natural Resources published an evaluation of disturbed phosphate lands recommending that radiation levels be determined when a site might be used for residential housing after reclamation.

69. By at least 2003, EPA was evaluating the risks presented by reclaimed phosphate-mining lands through its Florida Phosphate Initiative.

70. EPA identified the principal concern as exposure to unsafe radiation where homes had been built over former phosphate mines, because mining redistributes radium-226 toward the surface, where it emits gamma radiation and later decays into radon.

71. EPA estimated that many homes built over former phosphate mines in Polk County could have radium-226 or gamma-radiation levels exceeding EPA standards.

72. EPA materials addressing the Former Mine Area stated that urgent steps were needed to assess contamination and exposure and, as appropriate, implement mitigation to reduce potential risks to residents.

73. The Department of Energy and Argonne National Laboratory likewise reviewed radiation risks on reclaimed phosphate lands in Central Florida.

74. Federal remedial-action benchmarks include gamma-radiation and radium-in-soil levels. Federal reviewers concluded that a significant number of residential properties over former mine areas could contain radium-226 above remedial-action guidelines.

75. Federal reviewers identified portions of the Former Mine Area as highly likely to need additional action, with gamma-radiation levels several times background.

76. Despite this information, the contamination was not disclosed to the Bakers before they acquired and occupied the Baker Property.

**<u>F. Failure to Warn and the Bakers' Damages</u>**

77. Neither Drummond nor CS warned the Bakers that radioactive mining materials were present on, beneath, or around the Baker Property.

78. Neither Drummond nor CS warned the Bakers that governmental investigations had identified elevated gamma radiation within the Former Mine Area or predicted that homes there could exceed federal radiation guidance.

79. Neither Drummond nor CS warned the Bakers that specialized radiological investigation and remediation could be necessary.

80. The Bakers reasonably believed that their property did not present materially greater radiological hazards than ordinary residential property.

81. Radioactive materials remain on, beneath, or around the Baker Property and continue to emit radiation.

82. Radioactive contaminants and radiation from surrounding portions of the Former Mine Area continue to emanate, migrate, or intrude onto and affect the Baker Property.

83. The continuing contamination interferes with the Bakers' ability to use, enjoy, maintain, repair, and improve their residence without concern for disturbing radioactive materials.

84. Determining the nature and extent of the contamination requires specialized investigation, sampling, and radiological assessment.

85. Addressing the contamination will require reasonable remedial measures, which may include excavation, removal, treatment, replacement, containment, or other appropriate measures.

86. As a direct and proximate result of Drummond's conduct, the Bakers have suffered property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, annoyance, inconvenience, and other consequential losses.

87. As a direct and proximate result of CS's separate conduct, the Bakers have suffered property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, and other consequential losses.

**G. The Claims Are Timely**

88. The radioactive contamination affecting the Baker Property was latent, concealed, and not reasonably discoverable through ordinary observation.

89. The Bakers did not know when they acquired their interest in the property that it was affected by elevated radioactive contamination or that Defendants' respective conduct caused or contributed to that condition.

90. Under the federally required commencement date in 42 U.S.C. § 9658, any limitations period applicable to the Bakers' state-law property claims cannot begin before they knew or reasonably should have known that the property damage was caused or contributed to by the hazardous substances, pollutants, or contaminants at issue.

91. The continuing presence, emission, migration, and intrusion of radioactive contamination constitute an ongoing invasion of the Bakers' property rights that remains unabated.

92. On March 10, 2017, an action was filed in this Court on behalf of a proposed property class encompassing owners within the Former Mine Area and asserting materially overlapping contamination claims against Drummond. *See Jerue v. Drummond Co., Inc.*, No. 8:17-cv-00587-TPB-AEP (M.D. Fla.). The Bakers were absent members of that proposed class.

93. To the extent applicable, the pendency of the proposed class claims tolled limitations periods governing the Baker's overlapping claims.

94. Drummond's and CS's nondisclosures and concealment of the character, extent, and source of the radioactive contamination further prevent them from relying on a limitations period that would otherwise have run while the Baker's were reasonably unaware of their claims.

**COUNT I**
**STRICT LIABILITY UNDER CHAPTER 376 FLORIDA STATUTES**
**AGAINST DRUMMOND**

95. The Bakers incorporate the allegations previously made.

96. Through its mining, waste-management, reclamation, disposition, and development activities, Drummond released, discharged, placed, redistributed, or caused conditions of pollution

involving radium-226, other radionuclides, radioactive mining wastes, and other hazardous substances upon land or water within the Former Mine Area.

97. Drummond's conduct caused or contributed to radioactive contamination affecting the Baker Property.

98. Drummond failed immediately to contain, remove, or abate the discharge or condition of pollution, and the radioactive contamination remains present and unabated.

99. The Bakers are "person[s]" entitled to bring a cause of action for damages under section 376.313, Florida Statutes.

100. Drummond is strictly liable under sections 376.30 through 376.317, Florida Statutes, for the Bakers' damages resulting from the discharge or other condition of pollution.

101. As a direct and proximate result, the Bakers have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against Drummond for compensatory damages, attorney's fees where authorized, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate and demands a jury trial on all issues so triable.

## COUNT II
## STRICT LIABILITY UNDER CHAPTER 376 FLORIDA STATUTES
## AGAINST CHASTAIN-SKILLMAN

102. The Bakers incorporate the allegations previously made.

103. Through its own reclamation-related engineering and environmental work, CS handled, placed, managed, redistributed, failed to control, or caused conditions of pollution involving radium-226, other radionuclides, radioactive mining wastes, and other hazardous substances upon land or water within the Former Mine Area.

104. CS's conduct caused or contributed to radioactive contamination affecting the Baker Property.

105. CS failed immediately to contain, remove, or abate the discharge or condition of pollution arising from its conduct, and the radioactive contamination remains present and unabated.

106. The Bakers are "person[s]" entitled to bring a cause of action for damages under section 376.313, Florida Statutes.

107. CS is strictly liable under sections 376.30 through 376.317, Florida Statutes, for the Bakers' damages resulting from the discharge or other condition of pollution.

108. As a direct and proximate result, the Bakers have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against CS for compensatory damages, attorney's fees where authorized, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate and demands a jury trial on all issues so triable.

**COUNT III**
**NEGLIGENCE AND NEGLIGENCE PER SE**
**AGAINST DRUMMOND**

109. The Bakers incorporate the allegations previously made.

110. Drummond owed foreseeable purchasers, owners, and residents, including the Bakers, duties to exercise reasonable care in mining, handling and disposing of mining wastes, reclaiming and restoring former mine lands, investigating and controlling radioactive materials, developing land for residential use, and warning of latent hazards known to Drummond.

111. Drummond breached those duties by, among other things:

a. failing adequately to investigate and characterize the radiological condition of the Former Mine Area before residential development;

b. releasing, discharging, placing, redistributing, or leaving radioactive mining materials within the Former Mine Area;

c. failing safely to contain, remove, remediate, or abate radioactive contamination;

d. developing, promoting, selling, or causing the development and sale of former mine lands for residential use despite known elevated radiation levels;

e. failing to warn the Bakers and other foreseeable owners and residents of the latent radioactive contamination and the governmental findings concerning the Former Mine Area;

f. failing to comply with duties imposed by applicable Florida environmental and reclamation statutes and regulations, including Part II of Chapter 378, Florida Statutes, and Chapter 62C-16, Florida Administrative Code, as applicable; and

g. being otherwise negligent.

112. To the extent the identified statutes and regulations establish a standard of conduct designed to protect persons and property such as the Bakers and the Baker Property from the type of harm alleged, Drummond's violations constitute negligence per se or evidence of negligence.

113. Drummond's breaches directly and proximately caused radioactive contamination affecting the Baker Property and the Bakers' resulting damages.

114. The Bakers' have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, annoyance, inconvenience, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against Drummond for compensatory damages, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate, and demands a jury trial on all issues so triable.

**COUNT IV**
**NEGLIGENCE AND NEGLIGENCE PER SE**
**AGAINST CHASTAIN-SKILLMAN**

115. The Bakers incorporate the allegations previously made.

116. By undertaking professional engineering and environmental services in connection with reclaiming former phosphate-mine land intended for development, CS owed foreseeable purchasers, owners, and residents, including the Bakers, duties to exercise the reasonable care and professional competence ordinarily exercised under similar circumstances.

117. CS breached those duties by, among other things:

a. failing adequately to investigate and characterize radioactive materials within the area of its reclamation-related work;

b. participating in or allowing the handling, placement, redistribution, or retention of radioactive mining materials in areas intended for residential use;

c. failing to recommend, design, implement, or require adequate measures to segregate, contain, remove, remediate, or abate radioactive materials encountered through its work;

d. failing to warn Drummond, appropriate authorities, and foreseeable later owners and residents of latent radiological hazards associated with the reclaimed land;

e. failing to comply with duties imposed by applicable Florida environmental, engineering, and reclamation statutes and regulations, including Part II of Chapter

378, Florida Statutes, and Chapter 62C-16, Florida Administrative Code, as applicable; and

f. being otherwise negligent.

118. To the extent the identified statutes and regulations establish a standard of conduct designed to protect persons and property such as the Bakers and the Baker Property from the type of harm alleged, CS's violations constitute negligence per se or evidence of negligence.

119. CS's breaches directly and proximately caused or contributed to radioactive contamination affecting the Baker Property and the Bakers' resulting damages.

120. The Bakers have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against CS for compensatory damages, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate, and demands a jury trial on all issues so triable.

**COUNT V**
**PRIVATE NUISANCE**
**AGAINST DRUMMOND**

121. The Bakers incorporate the allegations previously made.

122. The Bakers own an interest in, lawfully possess, and reside at the Baker Property.

123. Through its mining, waste-disposal, reclamation, control, and development activities, Drummond created and has permitted to remain an ongoing condition of radioactive contamination within the Former Mine Area.

124. The nuisance is not limited to a static condition existing solely within the boundaries of the Baker Property. Radioactive contaminants and radiation emanating from and

present on surrounding portions of the Former Mine Area continue to migrate, emanate, intrude upon, and affect the Baker Property.

125. The continuing invasion substantially and unreasonably interferes with the Bakers' use and enjoyment of their residence, including their ability to use outdoor areas and to maintain, repair, or improve the property without disturbing radioactive materials.

126. The contamination causes annoyance, inconvenience, loss of use and enjoyment, diminution in value, and the need for specialized investigation and remediation.

127. Drummond knew or should have known that leaving radioactive mining materials on and around land developed for residential use would substantially interfere with the use and enjoyment of nearby residences, including the Baker Property.

128. The interference is substantial, unreasonable, continuing, and unabated.

129. As a direct and proximate result of the nuisance, the Bakers have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, annoyance, inconvenience, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against Drummond for compensatory damages, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate, and demands a jury trial on all issues so triable.

## COUNT VI
## PRIVATE NUISANCE
## AGAINST CS

130. The Bakers incorporate the allegations previously made.

131. The Bakers own an interest in, lawfully possess, and reside at the Baker Property.

132. Drummond retained CS to provide professional engineering and environmental services in connection with reclaiming the former phosphate mine for subsequent development.

Through its reclamation-related work, CS participated in the handling, placement, management, redistribution, and retention of radioactive mining wastes and other contaminated materials within the Former Mine Area.

133. CS's reclamation-related acts and omissions created or contributed to a continuing condition of radioactive contamination within the Former Mine Area. That condition remains present and unabated.

134. The nuisance is not limited to a static condition existing solely within the boundaries of the Baker Property. Radioactive contaminants and radiation emanating from and present on surrounding portions of the Former Mine Area continue to migrate, emanate, intrude upon, and affect the Baker Property.

135. CS knew or should have known that phosphate-mining wastes, clays, slimes, soils, and fill could contain elevated concentrations of radium-226 and other radionuclides. CS also knew or should have known that placing, redistributing, or leaving those materials near the surface in areas intended for residential development would create continuing radioactive contamination that would interfere with the use and enjoyment of affected residences, including the Baker Property.

136. CS intentionally undertook the reclamation-related activities alleged above and knew or should have known that its handling, placement, redistribution, or failure to control radioactive mining materials would result in a continuing invasion of and interference with nearby residential properties. Alternatively, CS created or contributed to the nuisance through the negligent acts and omissions alleged in Count IV.

137. The continuing invasion substantially and unreasonably interferes with the Bakers' use and enjoyment of their residence, including their ability to use outdoor areas and to maintain, repair, or improve the property without disturbing radioactive materials.

138. The contamination causes annoyance, inconvenience, loss of use and enjoyment, diminution in value, and the need for specialized investigation and remediation.

139. CS's lack of present ownership or possession of the affected land does not alter the fact that its own reclamation-related conduct created or contributed to the continuing condition of contamination and resulting interference alleged herein.

140. The interference with the Bakers' use and enjoyment of the Baker Property is substantial, unreasonable, continuing, and unabated.

141. As a direct and proximate result of the nuisance created or contributed to by CS, the Bakers have sustained property damage, reasonable investigation and remediation costs, diminution in value, loss of use and enjoyment, annoyance, inconvenience, and other consequential losses.

***WHEREFORE***, the Bakers demand judgment against Chastain-Skillman, LLC for compensatory damages, taxable costs, pre- and post-judgment interest, and such other legal relief as the Court deems appropriate and demands a jury trial on all issues so triable.

**JURY TRIAL DEMAND AND PRAYER FOR RELIEF**

***WHEREFORE***, Plaintiff hereby demands a trial by jury of all issues so triable. Plaintiff further requests that the Court enter an order or judgment against Defendants as follows:

A. Enter judgment in favor of Plaintiffs against Defendants for all allowable economic and noneconomic loss including the loss of permanent and temporary or continuing property value, stigma, unjust enrichment, the cost of prompt corrective action, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, fees and costs of this suit;

B. Award prejudgment and post-judgment interest as provided by law;

C. Award reasonable and necessary attorneys' fees and costs; and

D. Award such other relief as this Court deems necessary, just and proper.

Dated: September 18, 2026

Respectfully submitted,

NACE LAW GROUP

*/s/ Christopher T. Nace*
Christopher T. Nace, Esq.
FL Bar No.: 122634
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 (Tel.)
ctnace@nacelawgroup.com
*Counsel for Plaintiffs*

*AND*

Jonathan B. Nace, Esq. ( to be admitted pro hac vice)
Nidel & Nace, PLLC
One Church Street, Suite 802
Rockville, Maryland 20850
Telephone: (202) 780-5153
Email: jon@nidellaw.com

*Counsel for Plaintiff Duane Baker & Sylvia Baker*